921 F.2d 278
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Earl PETERSON, Petitioner-Appellant,
v.
James A. CHRANS, Warden, and Neil F. Hartigan, Attorney
General of the State of Illinois, Defendants-Appellees.
 No. 90-2244.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 18, 1990.
Decided Dec. 21, 1990.
 
 Before BAUER, Chief Circuit Judge, and CUMMINGS and FLAUM, Circuit Judges.
 
 ORDER
 
 1
 Earl Peterson brought this petition under 28 U.S.C. Sec. 2254 to challenge his 1979 conviction for murder, attempted murder and attempted armed robbery. He raised three claims for relief: (1) the trial judge erred in refusing to allow the jurors to take notes; (2) the trial judge erred in failing to investigate a juror's possible bias against him; and (3) appellate counsel was ineffective for omitting the claim of juror bias from his petition for leave to appeal to the Illinois Supreme Court. The district court dismissed the petition. Peterson appeals from the denial of relief on claims two and three. We affirm.
 
 
 2
 In January 1979 Earl Peterson and two other men were charged with murder, attempted murder, armed violence and attempted armed robbery in the Circuit Court of Cook County, Illinois. One of Peterson's co-defendants pled guilty. Peterson and the remaining co-defendant were tried simultaneously with separate juries.
 
 
 3
 On March 11 and 12, 1980, Peterson and the prosecution selected the jury in Peterson's case. During jury selection the judge criticized Peterson's attorney several times for writing down the addresses of prospective jurors. At one point the judge went so far as to prevent Peterson's attorney from even looking at his clerk's cards containing this information.
 
 
 4
 Shortly before lunch on March 12, 1980, the parties finished selecting the jury. After lunch a deputy sheriff approached the bench and informed the judge of a comment made by one of the jurors. The deputy sheriff stated:
 
 
 5
 [H]e [the juror] felt like he was the criminal.... He said they was [sic] writing down every word that was said, that they were taking notes on him and he thought maybe someone would, after this was over, and doesn't go their way, they would call his house and try to threaten him or talk to him about something.
 
 
 6
 Peterson's attorney asked the judge to "calm this juror down," and proceeded to argue about his right to take notes. When the judge indicated that he would say nothing to the juror, the attorney moved for a mistrial. The judge allowed the motion, but reiterated his refusal to inform the jury about the attorney's right to take notes. The attorney then asked the judge to "do something now to alleviate the fears of the juror who apparently is at this time in some way influenced against my client ... because of my action as his attorney in doing something." The judge reassured the attorney that he had done nothing wrong. The attorney and the judge continued their debate over the right to take notes. At the end of this discussion, the attorney again asked the judge to "make some effort to show the jurors nothing wrong occurred and the concerns they have should not exist." The judge still refused to mention the attorney's note-taking to the jury, saying that "[t]he least said about it the better...." Nevertheless, in his opening remarks to the jury, the judge admonished the jurors
 
 
 7
 that during the course of the trial, as during the voir dire when you were selected, counsel may take notes, as counsel used notes in order to conduct the trial. These notes, though, should be of no concern to you as those notes do not figure to be misused.
 
 
 8
 The trial proceeded, and the jury found Peterson guilty. The judge sentenced Peterson to concurrent prison terms of forty years for murder, fifteen years for attempted murder, and five years for attempted robbery. Peterson appealed his conviction to the Illinois Appellate Court, and raised the claim of juror bias. The Illinois Appellate Court affirmed in an unpublished order. Peterson next petitioned for leave to appeal in the Illinois Supreme Court. This time he omitted the claim of juror bias. The Illinois Supreme Court denied leave to appeal.
 
 
 9
 Peterson petitioned for habeas relief in the district court, alleging that the trial judge's refusal to allow the jury to take notes deprived him of his right to a fair trial, and that the trial judge's failure to investigate the juror's possible bias deprived him of his right to an impartial jury. The district court denied relief on the first claim on grounds of procedural default, and appointed an attorney to assist Peterson on the second claim. The court-appointed attorney thereafter amended the petition to raise a third claim for relief, that Peterson's appellate attorney deprived him of effective assistance by omitting the claim of juror bias from his petition for leave to appeal to the Illinois Supreme Court. After a review of the pleadings and the record from the state court proceedings, the district court dismissed the petition in a published opinion. See United States ex rel. Peterson v. Chrans, 735 F.Supp. 269 (N.D.Ill.1990). This appeal from the denial of relief on claims two and three followed.
 
 
 10
 With respect to the second claim, we agree with the district court that the trial judge did not so abuse his discretion in failing to investigate the allegations of juror bias that he deprived Peterson of his right to an impartial jury. See, e.g., United States v. McAnderson, 914 F.2d 934, 944 (7th Cir.1990); United States v. Bradshaw, 787 F.2d 1388, 1390 (10th Cir.1986); United States v. Caldwell, 776 F.2d 989, 997 (11th Cir.1985); United States v. Chiantese, 582 F.2d 974, 978 (5th Cir.1978), cert. denied sub nom. Cerrella v. United States, 411 U.S. 922 (1979); United States v. Hendrix, 549 F.2d 1225, 1227 (9th Cir.), cert. denied, 434 U.S. 818 (1977). The record indicates that one juror on the panel expressed his fears about note-taking by defense counsel during voir dire. The trial judge became aware of these fears through the deputy sheriff, and sought to alleviate them by instructing the jury during his opening remarks that counsel had a right to take notes. This action was sufficient to cure any possible taint, in the absence of evidence that the juror's fears influenced his view of Peterson's guilt or innocence. There was no such evidence here.
 
 
 11
 Peterson attempts to circumvent this result by arguing that his attorney's note-taking constituted a prejudicial "outside influence" on the juror, and, as such, required an investigation by the trial judge. We reject this argument. As the district court found, the influence upon the juror in this case did not come from the outside. 735 F.Supp. at 272. See Chiantese, 582 F.2d at 979 (rejecting suggestion of outside influence when member of jury, speaking to alternate jurors, criticized cross-examination by defendant's attorney); cf. United States v. Krall, 835 F.2d 711, 716 (8th Cir.1987) (holding that jurors' fear of IRS retaliation does not fall within "outside influence" exception of Fed.R.Evid. 606(b)). The juror's statements to the deputy sheriff concerned the conduct of Peterson's attorney in defending the case. "[His] observations related to an aspect inseverable from our adversary system of justice, an aspect [one] would be naive to presume is not considered by jurors." Chiantese, 582 F.2d at 979.
 
 
 12
 We therefore affirm the district court's conclusion that Peterson was unable to show that his appellate attorney's failure to present the claim of juror bias to the Illinois Supreme Court caused him sufficient "prejudice" to overcome the procedural bar rule of Wainwright v. Sykes, 433 U.S. 72 (1977). In so doing, we need not decide whether ineffective assistance of counsel in a discretionary state court appeal establishes good "cause" for a procedural default. Compare Maydun v. Young, 852 F.2d 1029, 133 n. 2 (7th Cir.1988) (may constitute cause), with Buelow v. Dickey, 847 F.2d 420, 426 (7th Cir.1988) (cannot establish cause), cert. denied sub nom. Buelow v. Bablitch, 489 U.S. 1032 (1989); cf. Coleman v. Thompson, 895 F.2d 139, 144 (4th Cir.) (petitioner cannot show "cause" for procedural default by showing ineffective assistance of counsel in state habeas corpus proceeding), cert. granted, 59 U.S.L.W. 3325 (U.S. Oct. 29, 1990) (No. 89-7662).
 
 
 13
 To the extent that the third claim constitutes an independent claim for relief, we affirm the district court's conclusion that Peterson had no constitutional right to the effective assistance of counsel in his discretionary appeal to the Illinois Supreme Court. See Ross v. Moffett, 417 U.S. 600, 610 (1974).
 
 
 14
 AFFIRMED.